UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUTING KANG,<br><br>    Plaintiff,<br><br>    v.<br><br>SOPHIE HARRISON, et al.,<br><br>    Defendants. | Case No. 17-cv-03034-DMR<br><br>**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>Re: Dkt. No. 27 |

Plaintiff Shuting Kang moves pursuant to Federal Rules of Civil Procedure 15(a) and 19(a) to file an amended complaint. [Docket No. 27.] Defendants oppose the motion. On November 30, 2017, the court ordered Kang to file a reply to Defendants' opposition, which she timely filed. [Docket Nos. 37, 39 (Reply).] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I. BACKGROUND**

    **A. Allegations in Original Complaint[1]**

Kang is a "Chinese investor who is seeking a legal path to U.S. residency." She alleges that Defendants Sophie Harrison, Shengrun International Industry Group, Inc., Sino-USA Entrepreneur Association, Inc. ("Sino-USA" or "Sino-USA Entrepreneur Association"), and ten Doe Defendants "perpetuated an investment scheme to exploit a federal visa program" to defraud her.[2] Compl. ¶ 2. Foreign nationals may obtain U.S. residency under the "EB-5 Program by

---

[1] For purposes of this motion, the court considers only Kang's allegations, which must be taken as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[2] Kang alleges that Sophie Harrison is also known as Xianquin Wang Harrison, Sophia Wang, Xianqin Wang, and Xueqing Wang. Compl. The original complaint refers to Sophie Harrison as "Defendant Harrison." However, the proposed amended complaint refers to her as "Defendant Wang." As Kang seeks leave to amend to add Sophie Harrison's husband, Jarrod Harrison, as a defendant, the court refers to Sophie Harrison and Jarrod Harrison by their full names in order to

investing in domestic projects that will create or preserve a minimum number of jobs for U.S. workers. *Id*. at ¶ 3. According to Kang, Defendants enticed her to "invest in their purported '229 International Boulevard' ('229 Project')," which was "an alleged EB-5 regional center immigration project" in Oakland, California. *Id*. at ¶ 4. However, after investing over $500,000 in the project, Kang learned that the project was "bogus," and that Sophie Harrison "had spent all [Kang's] investment money for personal benefits." *Id*.

Specifically, Kang alleges that she and her son traveled to California from China in January 2015 for a meeting with Sophie Harrison at her San Mateo, California office. During the meeting, Sophie Harrison described the 229 Project to Kang as an "EB-5 investment apartment complex project," and described floor plans and other information about the project. *Id*. at ¶ 16. Sophie Harrison "promised [Kang] that as long as she would invest $500,000 in the '229 Project,' she would be able to complete the EB-5 application for [Kang] and file the applications for temporary residence status" before Kang's son turned 21 in 2016. *Id*. at ¶ 17. Sophie Harrison "assured [Kang] that they would get their temporary green cards" in or around June 2017. *Id*. Additionally, she told Kang that the 229 Project would be completed by June 2017, and that Kang would "get a condo unit from the project with rental income" so that Kang could "recover her $500,000 investment" and "receive profits." *Id*. at ¶ 18.

Kang alleges that following the presentation, Sophie Harrison "made [Kang] sign an immigration service retainer contract." *Id*. at ¶ 19. The agreement, which is Exhibit A to the complaint, is on Sino-USA Entrepreneur Association letterhead and is titled "Investment Immigration Retainer Agreement." [Docket No. 1-1 (Retainer Agreement).] The agreement contains two parts; the first is in Chinese and the second appears to be the English translation. The first part contains two signatures. The second contains shows two typewritten signatures: "Sophie," on behalf of Party A, defined as Sino-USA Entrepreneur Association; and "Shuting Kang," listed as the "Signature of party B representative." The agreement contains the following description of the parties' obligations:

---

avoid confusion.

> The cont[r]act is related to: pursuant to the US Immigration and Nationality Act (INA), 8 U.S.C. § 1153(b)(5) and relevant business investment law, party B invests in the project of party A project center at 229 International Blvd., Oakland, CA. Party B is an investor for party A's EB-5 project, party A appoints an investment immigration attorney for party B to submit its US investment immigration (EB5) application . . . and to complete party B's conditional green card application through investment immigration.

Retainer Agreement at ECF p. 5. It provides that "party B" will pay an "investment immigration fee" of $80,000, which includes attorneys' fees and application fees, in addition to the $500,000 investment. *Id*. at ECF pp. 7-8.

According to Kang, Sophie Harrison also "made [Kang] sign a 'House Purchase Deposit Agreement' . . . which provides that [Kang] is a buyer of a 'to-be-built' condo unit" in the 229 Project "for a price of $650,000.00 with a $10,000.00 deposit." *Id*. at ¶ 20. Kang asked why no lawyer was named in the agreements. In response, Sophie Harrison assured Kang that "everything is legal and reiterated that the '229 Project' was approved by the [U.S. Citizenship and Immigration Services] and designated for EB-5 investor immigration purposes." *Id*. at ¶ 21.

In January and February 2015, Sophie Harrison met with Kang "several times" in Shenzhen, Guanzhou, and other places in China, and "urged [Kang] to make the first deposit of $10,000," which Kang paid by wire transfer. *Id*. at ¶ 22. Between January 2015 and April 2015, she also "persistently urged [Kang] to wire $520,000" to her bank account under the name of "Sino-USA Entrepreneur Association," and "repeatedly assured [Kang] that she and her son would timely get their US green cards." *Id*. at ¶ 23. Kang again asked Sophie Harrison "why there was no lawyer involved in the process," to which she replied "[Kang] should just trust her and that's the only way that Defendant [Sophie] Harrison could best help [Kang]." *Id*. Relying on Sophie Harrison's promises and assurances, Kang wired $520,000 in April 2015 to Sophie Harrison's account under the name Sino-USA Entrepreneur Association. *Id*. at ¶ 24.

Kang also alleges that she was also induced by Sophie Harrison to loan money to Sophie Harrison's company, Defendant Shengrun International Industry Group, Inc. ("Shengrun"). In late January 2015, Kang loaned Shengrun "RMB 5 million at a monthly interest of RMB 150,000.00." *Id*. at ¶ 25.

In or around the end of May 2015, Kang called Sophie Harrison and asked about the status

of her EB-5 visa application. Sophie Harrison told Kang "that there [was] a hitch because [Kang's] son would age-out as a follow-to-join dependent," but that "she would have her son apply for the investor immigration as a principal applicant and would not therefore be subject to the 21-year-old time limit." *Id*. at ¶ 26. She "reassured [Kang] that there [was] no problem in their arrangement and there [was] nothing to worry about." *Id*.

Kang alleges that Sophie Harrison told her "many times that the construction work" for the 229 Project had started in June 2015. In September 2015, Kang learned from a friend that "the designated location [was] just an empty piece of land." *Id*. at ¶ 27. When confronted, Sophie Harrison "admitted that there was a problem with the project, that she had not done anything on the immigration application of [Kang] and her son, and that she had already spent [Kang's] money for personal benefits." *Id*. Further, with respect to the loan to Shengrun, Kang alleges that Sophie Harrison had paid the specified monthly interest on the loan to Kang until March 2016, and thereafter had "stopped paying its obligation to [Kang] altogether." *Id*. at ¶ 28. At some point, Kang traveled to the United States to "negotiate with Defendants for the return of her immigration investment money" and repayment of the loan, "but her demands fell on deaf ears." *Id*. at ¶ 29. She alleges that she has lost over $1,500,000 due to Defendants' actions. *Id*. at ¶ 30.

Kang alleges twelve claims for relief against all defendants: 1) fraud, based on "illegal brokering of EB-5 investments"; 2) fraud, based on "misusing EB-5 investments" in the amount of $530,000; 3) violations of sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933, which Kang alleges prohibits "fraud and misrepresentations in the offer or sale of securities," including investment contracts (Compl. ¶¶ 45, 49) (*see* 15 U.S.C. § 77q(a)(1), (3)); 4) violation of section 17(a)(2) of the Securities Act of 1933, based on Defendants' "false and misleading statements in enticing [Kang] to invest in the sham '229 Project'" (Compl. ¶ 55) (*see* 15 U.S.C. § 77q(a)(2))[3]; 5)

---

[3] Kang's third and fourth claims for relief allege violations of sections 17(a)(1), (2), and (3), 15 U.S.C. § 77q(a)(1)-(3). That statute provides the following:

> It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

4

violation of section 10(b) of the Securities Exchange Act and Commission Rule 10b-5, based on Defendants' "untrue statements of material fact and [omissions of] material facts" (Compl. ¶ 61) (*see* 15 U.S.C. § 78j(b)), 17 C.F.R. § 240.10b-5)[4]; 6) violation of the Racketeer Influenced and

---

> **(1)** to employ any device, scheme, or artifice to defraud, or
>
> **(2)** to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> **(3)** to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

[4] Section 10(b), 15 U.S.C. § 78j(b), states

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
>
> **(b)** To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[1] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Commission Rule 10b-5 states

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

5

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., based on Defendants' "dishonest and fraudulent business dealings, specifically, fraud in the sale of securities . . . and the loaned money of RMB 5 Million Yuan" (Compl. ¶ 70); 7) deceit or intentional fraud under California law (California Civil Code sections 1709, 1710, 1572, and 1573); 8) negligent misrepresentation; 9) promissory fraud; 10) unjust enrichment; 11) conversion; and 12) unlawful and/or unfair business practices in violation of California's Unfair Competition Law, California Business and Professions Code section 17200 ("UCL").

### B. Proposed Amended Complaint

The proposed amended complaint adds Jarrod Harrison as a defendant on all claims. To support the allegations against Jarrod Harrison, Kang alleges that Jarrod Harrison is Sophia Harrison's husband and is also the honorary president of Defendant Sino-USA. [Docket No. 27-2 (Prop. Am. Compl.) ¶ 14.] She further alleges that the Investment Immigration Retainer Agreement signed by Sophie Harrison and Kang is on Sino-USA letterhead. *Id.* at ¶ 21. Under her sixth claim for violation of RICO, Kang alleges that Sophia Harrison, Jarrod Harrison, Sino-USA, Shengrun, and third party Guangzhou Bozhi Trading Company "[c]onniv[ed] and plot[ed] together . . . [to] engage[] in dishonest and fraudulent business dealings, specifically, fraud in the sale of securities" and the loan of RMB 5 Million Yuan. *Id.* at ¶ 72.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent reason," such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district

court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir.1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *FlatWorld Interactives LLC v. Apple Inc.*, 12-CV-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013). "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.'" *Id*. (quoting *Eminence Capital*, 316 F.3d at 1052).

## III. DISCUSSION

In her brief eight-line motion, Kang asserts that after filing the original complaint, she determined that the name of one of the Doe Defendants is Jarrod Harrison. She now seeks to file an amended complaint either substituting him for a Doe Defendant and/or adding Jarrod Harrison as a defendant. In a declaration filed in support of the motion, Kang's attorney asserts that the Immigration Investment Retainer Agreement was "entered into between Sino-USA Entrepreneur Association, Inc., as 'Party A' and Plaintiff Kang, as 'Party B,'" and that Sino-USA "was the recipient of the $520,000 loan from Plaintiff Kang due to Defendant Sophie Harrison's representation."[5] [Docket No. 29-1 (Jew Decl., Oct. 17, 2017) ¶¶ 4, 5.] Based on these facts, counsel asserts that there is "justifiable ground to believe Jarrod Harrison's deep involvement with regard to the allegations in [Kang's] Complaint." *Id*. at ¶ 6.

Defendants oppose the motion on grounds of futility, undue prejudice, and bad faith. As to futility, they argue that Kang's fraud and fraud-based claims must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). They argue that the proposed amended complaint fails to satisfy this standard as it contains no details of Jarrod Harrison's alleged

---

[5] Counsel's characterization of the $520,000 as a "loan" is inconsistent with the allegations in the proposed amended complaint, in which Kang alleges that she wired $520,000 "investment money" to Sophie Harrison's account under the name "Sino-USA Entrepreneur Association," and loaned money to Shengrun. *See* Prop. Am. Compl. ¶¶ 26, 27. There are no allegations in the proposed amended complaint that Kang loaned money to Sino-USA Entrepreneur Association, Inc.

7

involvement with the wrongdoing alleged by Kang.

A proposed amendment may be denied as futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton,* 845 F.2d 209, 214 (9th Cir. 1988). "Under futility analysis, '[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Krainski v. Nevada*, 616 F.3d 963, 972 (9th Cir. 2010) (quotation omitted)). "Denial of leave to amend on [the ground of futility] is rare," *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 538-39 (N.D. Cal. 2003), and if it is "not clear beyond doubt that amendment of [a] complaint would be futile," a court should permit a party to amend its complaint rather than deny leave to amend on the basis of futility. *See Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005). Ordinarily, "courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC*, 212 F.R.D. at 539 (citation omitted).

Under Rule 9(b), allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must include "the who, what, when, where, and how" of the misconduct charged). Vague or conclusory allegations are insufficient to satisfy Rule 9(b)'s particularity requirement. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). "A party alleging fraud must 'set forth *more* than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). The Rule 9(b) heightened pleading standard also applies to claims for which fraud is not a necessary element but that are nonetheless "grounded in fraud." *Vess*, 317 F.3d at 1103. Where a plaintiff alleges "that the defendant has engaged in fraudulent conduct," including "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said

to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id*.

All of Kang's claims rely entirely on "a unified course of fraudulent conduct" and are therefore subject to Rule 9(b)'s heightened pleading standard. *See id*. While "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant . . . Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (quotation omitted) (emphasis removed). At a minimum, a plaintiff must "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Id*. at 765 (quoting *Moore*, 885 F.2d at 541). The proposed amended complaint does not satisfy that requirement as to Jarrod Harrison. The allegations about Harrison are scant; Kang alleges only that Jarrod Harrison is Sophie Harrison's husband and the "honorary president" of Defendant Sino-USA; that the Investment Immigration Retainer Agreement signed by Sophie Harrison and Kang is on Sino-USA letterhead; and that Sophie Harrison, Jarrod Harrison, Sino-USA, Shengrun, and third party Guangzhou Bozhi Trading Company "[c]onniv[ed] and plot[ed] together . . . [to] engage[] in dishonest and fraudulent business dealings, specifically, fraud in the sale of securities" and the loan of RMB 5 Million Yuan. Prop. Am. Compl. ¶¶ 14, 21, 72. These allegations are vague and conclusory. They are insufficient for purposes of Rule 9(b).

In her reply, Kang advances numerous theories about how Jarrod Harrison could be liable for her claims based on his role as a corporate officer or executive of Defendant Sino-USA, including the theories that Jarrod Harrison may be liable for Sophie Harrison and Sino-USA's fraud if he had "ultimate authority" over their statements, *see Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), or if he "directly or indirectly . . . control[led]" any person liable for violating the securities laws. *See* 15 U.S.C. § 78t(a). While these may be viable theories supporting Jarrod Harrison's liability for Securities Act violations (and the court expresses no opinion about the viability of those theories), the proposed amended complaint does

9

//

//

//

not support either of those theories, since it contains virtually no facts about Jarrod Harrison's control over any defendant or ultimate authority over any fraudulent statements.[6]

While the proposed amended complaint does not satisfy Rule 9(b)'s particularity requirement or plead facts to support alternative theories of liability for Securities Act violations, the Ninth Circuit has instructed that "[t]he standard for granting leave to amend is generous" and that leave to amend should be granted when a court can "conceive of facts that would render [a] plaintiff's claim viable." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (quotation omitted). Here, the court can conceive of additional facts that could support Kang's claim that Jarrod Harrison is liable for at least some of the claims in the proposed amended complaint. Since it is possible that Kang can correct the defects in the proposed amended complaint, the court does not find that amendment would be futile.

Defendants' remaining arguments are undue prejudice and bad faith. Neither is persuasive. Their undue prejudice argument rests on the insufficiency of the allegations as to Jarrod Harrison and is duplicative of their futility argument. As to bad faith, Defendants present no evidence of bad faith, only attorney argument that Kang seeks to amend the complaint to "up the ante for Defendants" and use the amendment as "an abusive, bludgeoning tactic." Opp'n 4.

Accordingly, Kang's motion for leave to amend the complaint is granted. Kang is granted leave to file a revised amended complaint **by January 5, 2018**, the merits of which Defendant may challenge through an appropriate motion.

### IV. CONCLUSION

For the foregoing reasons, Kang's motion for leave to amend the complaint is granted.

---

[6] Kang also asserts that Jarrod Harrison may be held personally liable for all of the claims alleged in the complaint under the "responsible corporate officer doctrine." Reply 5. It's not clear how that doctrine applies, since "[t]he responsible corporate officer doctrine was developed by the United States Supreme Court to hold corporate officers in responsible positions of authority personally liable for violating strict liability statutes protecting the public welfare." *People v. Roscoe*, 169 Cal. App. 4th 829, 831 (2008) (citations omitted).

10

Any revised amended complaint shall be filed **by January 5, 2018**.

**IT IS SO ORDERED.**

Dated: December 22, 2017



Donna M. Ryu
United States Magistrate Judge